Colcock, J.
delivered the opinion of the Court.
I cannot but join in the regret, so often expressed, that there should be so much difference of opinion upon a subject of so frequent recurrence. Yet it must be confessed, that the subject is one of no ordinary difficulty. To allow, on the one hand, these secret'conditions to be annexed to sales of personal property, must, it is said, have a tendency to encourage perjury, prejudice the transfer of this kind of property, and consequently to diminish its value, and above all, to subject individuals to gross impositions. But yet all these are evils, which it is not in the power of the law to prevent, under any regulations, which can be made on.the subject. And on the other hand it may be asked; 1st, whether all these evils would really follow ? and 2d, by what authority these restrictions on the disposition of personal property can be made? If one honestly enter into an agreement, such as the one now before us, with a view to assist a friend, why should be not be permitted to do so? It will not be a sufficient answer to say, that impositions may result. The law can only re.mtdy them, when they do occur; for it never can be expected of any laws, that they shall operate as preventive of injustice.
It is said by some, that the statute of 13 Eliz. c. 5, applies to questions of this character; and that ever since the decision of Twyne’s case, the'possession is considered as conclusive evidence of the right of property: and that this is rather a question for the Court, than for the jury. But there have been many decisions contrary to this opinion, both as to the legaliry of such a contract, and as to the tribunal which shall decide the question: and I think that when we examine the cases iit *565 reference to the principle, it will be found, that the possession being' in one, iind the right of property in another, does not, per sc, constitute a fraud, but that it only furnishes a presumption of fraud; and then it is incumbent on the person claiming the right of property, to prove clearly, and satisfactorily, to the jury, that the transaction was bona. fide.
The statute of 13 Eliz. relates to fraudulent alienations of property to the injury of creditors: but it does not say what shall be regarded as such ; and it does not make any distinction between conditional, and absolute sales. Both, if fraudulent, are void. The question is therefore left open by that statute, which has been frequently said to be only a re-enactment of the common law.
It is every day’s practice to sell personal property, and to take -a mortgage to secure the payment of the debt, and the mortgage is held good, although never recorded, but kept in the desk of the mortgagee. Now how can such a lien on property be better known to the community, than the verbal one made in this case? If the person in possession be disposed to commit a fraud, no vigilance can protect a purchaser in either case; and creditors would be as liable to imposition in the one, as in the other. So also the law does not pretend to prohibit the loan of property; and with us, in relation to a particular species of personal property, it is every days practice to hire it out. In these cases the possession is certainly not in accordance with the right of property, and frauds may be practised under the color of such dealings. I cannot therefore think that there is any law, which forbids the conditional sale of personal property, even where there is a delivery. It is even contended, in some cases, that where the sale is absolute, yet the vendor may remain in possession, if the purpose be fair and honest. There is, to be sure; great conflict of opinion among the different tribunals on this point; and I think that, upon the whole, the weight of authority is against such a condition : yet it seems to be hard to lay down so rigid a rule,.as that the bare possession in such'a case shall be considered, per se, an evidence of fraud. 2 Kent. Com. 405. Personal property has become more valuable in the present day, than it formerly was; and although, from its nature, there is a facility m the transfer of it, which *566 seems to forbid the idea of its being clojrged with conditions when transferred from one to another, yet without this it would lose much of its value: and when it is known to be the law of the land, that this may be done, the community will be on their guard, and the necessary inquiries will be made. I am aware that it may be said, this would greatly impede the exchange, or transfer of articles of little value, and those of common merchandize : but as to such, no man of common sense would ever think of parting with the possession, on conditions, unless they should be very limited as to time.
In the case of Hussey v. Thornton, 4 Mass. 405, the property was considered as remaining in the vendor even after delivery; the terms of sale not being complied with, and it being stipulated before the delivery that this should be the case. But-th.ere is a qualification to this decision which takes much from its weight, to say the least. The Court say, that had the demands of the creditors originated while the goods were in the possession of ihe vendees, so that it might be fairly presumed, that a false credit was given to them; or had they sold them bona fide and for a valuable consideration, our opinion would have been otherwise.
By the law of England, which is, in this respect, more favorable lo the transfer of property, the great subject of commerce, and less attentive to the interests of the seller of goods, than the ancient civil law, or the modern law of many European nations, which is chiefly founded on the civil law, delivery is certai ;ly considered as an evidence of an absolute transfer of right. But the civil law did not, in,general, consider the transfer of property to be complete by sale and delivery alone, without payment, or security for the price, unless the seller agreed to give a general credit to the buyer for it; but the seller was allowed to reclaim the goods out of the possession of the buyer, as still the seller’s own property. Dig. 18. 1. 19. and 53. Dig. 19. 1. 13. 8. and Dig. 14. 4. 5. 18. Abbot on Shipping, part 3. ch. 9. sec. 2. And such was the law of France until the introduction of the Code Napoleon. 2 Kent’s Com. 392, note d. And it appears by a note to the section in Abbot, just cited, that by the custom of some parts of France, a person, who had sold goods expecting to be paid, .might, if not paid, retake the goods, even out of *567 the possession of a subsequent purchaser. So, too in the case of lands, even in England, Chancery regards the purchaser as a trustee for the seller, if the'purchase money is not paid,
I atn well aware, that the introduction of these pure principles of the civil law have, in the practical concerns of life, created much confusion, and with us, much,litigation. But yet, I canuot. hesitate to call in question the wisdom of those laws, which shackle the legitimate use of property; nor can I yield too ready an assent to arguments ab incoñvenienti: for notwithstanding the artifice of man, I think there is something so pure, and I may almost say, so holy, in the principles of virtue and honesty, that it is difficult for fraud and artifice to assume their garb. In an honest transaction, the character of the parties, their relative circumstances in life, their connexion, the publicity of the act, affording an easy means of proof, I think would at once establish its character. But I go still further. If from any pure motives, either the ties of consanguinity, or the more elevated and sublimated motives of charity, one is disposed to encourage and support an improvident relation, or an unfortunate being, who is incapable of retaining property; why may he not sell on condition, and thereby induce him to exert himself, and procure the means of subsistence1? Shall the law say, if you transfer the possession, the right is gone, and the property may be taken by any keen, sharp-sighted creditor, who is ready to prey on bis improvident fellow-beings? I have often thought that it was worthy of consideration, whether the rights of creditors were not too much guarded by the law. All creditors are put on the same footing. He who has been imposed on, and he, who by his artifice has drawn an unsuspecting, and confiding being, into utter ruin by his delusive temptation to buy on credit, are equally regarded : and I would ask the man of experience, what is the proportion between the two classes; and whether the unfortunate debtor does not oftentimes pay for his credit, double, and not unfrequently even treble, the value of what he has received?
The presiding Judge seems to think, that if made by a writing, such condition could be maintained; b,ut there is no such distinction in the law that I am aware of, and I have before remarked that it would not be more effectual in preventing frauds. *568 I am therefore upon the whole, for supporting the contract, on the authority of Dupree v. Harrington.
The case of Bailey v. Jennings depends on the same doctrine, and iá therefore considered as decided by this case. The motions, for a new trial in the one case, and for setting aside the nonsuit in the other, are both granted.
Johnson, J. and Evans, J. concurred.